UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Savoie,                                              Civil No. 13-1228 (DWF/SER)

          Plaintiff,

v.                                                         **MEMORANDUM**
                                                                **OPINION AND ORDER**
Genpak, LLC,

          Defendant.

_____

Nixon O. Ayeni, Esq., Law Office of Nixon Ayeni, counsel for Plaintiff.

Carl Crosby Lehmann, Esq., and Matthew Webster, Esq., Gray Plant Mooty Mooty & Bennett, PA; and Michael D. Billok, Esq., Bond, Schoeneck, King, PLLC, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant Genpak, LLC's ("Defendant") Motion for Summary Judgment. (Doc. No. 38.) For the reasons set forth below, the Court grants Defendant's Motion.

## BACKGROUND

Defendant manufactures disposable food service packaging and is headquartered in New York with several locations nationwide. (Doc. No. 40 ("Sawchuk Decl.") ¶¶ 2-4.) Plaintiff was employed by Defendant from June 1, 1972 to December 3, 2012 and worked most recently at the Lakeville, Minnesota plant. (*Id.* ¶ 9.)

Plaintiff's claims stem from his termination by Defendant. On November 29, 2012, Plaintiff was involved in a dispute with his supervisor, Russell Snyder ("Snyder"), a Plant Manager for Defendant. (*Id.* ¶ 28.) On December 3, 2012, Plaintiff was terminated for insubordination as a result of the dispute. (*Id.* ¶ 29.)

The events that gave rise to the dispute between Plaintiff and Snyder began in 2006, when Plaintiff was promoted to Extrusion Department Manager. (Doc. No. 39 ("Billok Decl.") ¶ 4, Ex. D ("Savoie Dep.") at 9.) Plaintiff was hesitant to accept the promotion due to the increase in responsibility but only marginal increase in salary. (Doc. No. 40-12 ("Snyder Decl.") ¶ 3; Savoie Dep. at 12-13.) However, Plaintiff accepted the position after receiving encouragement from Snyder. (Snyder Decl. ¶ 3; Savoie Dep. at 13.) At the time of Plaintiff's promotion, Snyder did not know Plaintiff's exact age, but did know Plaintiff was in his fifties. (Snyder Decl. ¶ 3.) During the negotiations for the promotion, Snyder alluded to an increase in Plaintiff's salary in the near future, promising that "your boss will recognize you," and "we'll get you there." (Savoie Dep. at 12-13, 16.)

Shortly after accepting the new position in 2006, Plaintiff and Snyder's relationship became contentious, such that Plaintiff began to document their interactions in a journal. (Savoie Dep. at 56-57.) After his promotion, Plaintiff was moved to the day shift after working the night shift since 1977. (*Id.* at 37-38.) However, as part of his new job responsibility to train personnel, Plaintiff was shifted back to nights between February and May of 2007 and again in February of 2010. (*Id.* at 37-39; Snyder

Decl. ¶ 4.) Plaintiff testified that the shift change caused the recurrence of a sleeping condition after a period of dormancy. (Savoie Dep. at 37.) Plaintiff stated that Snyder "strongly contributed" to the recurrence of the sleep disorder when Snyder singled him out to switch to night shifts, despite Plaintiff's pleas not to switch. (*Id.*)

In a 2007 performance review, Snyder offered Plaintiff a four percent raise over the three percent raise offered to most employees. (*Id.* at 14-16.) Plaintiff was dissatisfied and believed he had been promised a higher raise by Snyder. (*Id.*) Through the years, Plaintiff continued to record his hostile interactions with Snyder in his journal. (*Id.* at 56-57.) In 2012, Plaintiff disagreed with and refused to sign his performance review and forfeited a potential raise. (*Id.* at 19-20.) Snyder responded by revising and improving Plaintiff's performance review. (*Id.* at 21-24.) Plaintiff did not accept the amended review and continued his protest by refusing to sign the review. (*Id.* at 24-25.) As a result, Plaintiff declined the proposed raise and forfeited the potential back pay from the raise. (*Id.* at 25.)

Beginning August 27, 2012, Plaintiff and Catherine Sawchuk, the Genpak Director of Human Resources, exchanged a series of e-mails in which Plaintiff used an alias because he feared retribution. (Sawchuk Decl. ¶ 10, Ex. C.) These e-mails included: discussions about the relationship between Plaintiff and Snyder; allegations of potential legal violations concerning improper FDA paperwork for resin purchases, OSHA violations, and falsification of paperwork; and other grievances surrounding Plaintiff's employment. (*Id.*) On September 28, 2012, Plaintiff called Sawchuk, and

identified himself as the author of the e-mails and continued to voice his grievances against Snyder and the practices at Defendant's facility that he thought were illegal. (Sawchuk Decl. ¶ 11.)  On October 8, 2012, Plaintiff sent Sawchuk another e-mail with a list of violations he believed occurred at Genpak, as well as details regarding a personal dispute between Plaintiff and Snyder.  (Sawchuk Decl. ¶ 12; Savoie Dep. at 101-02.)  The dispute that Plaintiff reported about occurred when Snyder circulated a picture with a comment about Plaintiff's weight.  (Sawchuk Decl. ¶ 21; Savoie Dep. at 143-44.) Sawchuk began an investigation into the alleged violations and the dispute and promptly scheduled a personal visit to the plant from her New York office.  (Sawchuk Decl. ¶ 13.)

On October 16, 2012, Sawchuk met with Plaintiff to address his complaints. (*Id.* ¶ 15; Savoie Dep. at 101.)  Over the course of an 8.5-hour interview, Sawchuk requested evidence regarding the alleged violations and the names of employees who could verify Plaintiff's allegations.  (Sawchuk Decl. ¶ 15; Savoie Dep. at 102.)  Sawchuk continued her investigation in New York by interviewing employees and corresponding with Plaintiff through e-mail.  (Sawchuk Decl. ¶ 18.)

Over the course of her investigation, Plaintiff failed to provide any information showing falsification of production reports or other evidence supporting his claims of Genpak violations.  (*Id.* ¶¶ 19, 20; Savoie Dep. at 99-102.)  Sawchuk testified that her interviews with the other employees revealed conflicting information.  (Sawchuk Decl. ¶ 23.)  Sawchuk completed her initial findings on November 27, 2012, and concluded that there was no evidence to corroborate Plaintiff's claims regarding the

falsification of production reports, safety issues, OSHA violations, or actionable discrimination. (Sawchuk Decl. ¶¶ 25-27.) Sawchuk finalized her report after conferring with counsel on November 29, 2012. (*Id.* ¶ 27, Ex. I.)

At approximately 4:00 p.m. on November 29, 2012, Snyder and Plaintiff had an argument resulting in Plaintiff's termination. (Savoie Dep. at 153-55.) The parties agree that during the argument, Plaintiff picked up the phone in his office, which connected to the plant paging system, and said either "I'm sick of you hassling me, I'm sick of this shit" or "I'm sick and tired." (Snyder Decl. ¶ 7; Savoie Dep. at 156.) Directly following the argument between Plaintiff and Snyder, Plaintiff contacted Sue Lehman ("Lehman"), the Human Resources Manager, to request a temporary leave of absence and was provided with Family and Medical Leave Act paperwork to be filled out by his doctor. (Doc. No. 40-14 ("Lehman Decl.") ¶ 5.) Plaintiff responded that he wanted to pursue a workers' compensation claim for the stress caused by Snyder, and Lehman advised Plaintiff to go to Defendant's clinic to be evaluated. (*Id.*)

On November 30, 2012, Sawchuk was informed of Plaintiff and Snyder's argument involving the paging system. Sawchuk spoke with Snyder that day and again on December 3, 2012. (Snyder Decl. ¶ 14.) Plaintiff was terminated for insubordination and denigrating Snyder and received his notice of termination on December 3, 2012. (Sawchuk Decl. ¶ 29.) Plaintiff was 58 years old at the time he was terminated. (Savoie Dep. at 108.) Plaintiff's position as Extrusion Department Manager remained vacant for approximately two months and was eventually filled by Don Kiser, a 51-year-old man

5

who had a new title with different duties. (Sawchuk Decl. ¶¶ 31-32; Savoie Dep. at 106-08.)

At his deposition, Plaintiff testified that Snyder made comments about the age of other employees in a negative manner. (Savoie Dep. at 51-54.) Plaintiff did not record any entries in his eighteen-page journal regarding these age-related comments and admitted to not being aware of Snyder making a comment about his age. (*Id.* at 51, 55-57, 60-61.) Plaintiff also stated that while he knew the "stated" reason for his termination, he did not know why he was terminated. (*Id.* at 108-09.)

On May 6, 2013, Plaintiff filed the present action asserting two claims against the Defendant: (1) Violation of the Minnesota Human Rights Act ("MHRA") for age discrimination under Minn. Stat. § 363A.08 (Count I); and (2) Violation of the Minnesota Whistleblower Act ("MWA") under Minn. Stat. § 181.932 (Count II). (Doc. No. 1 ("Compl.").) Defendant now moves for summary judgment on both counts. (Doc. No. 38.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has

stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Age Discrimination Claim

Age discrimination claims under the MHRA, Minn. Stat. § 363A.08, are analyzed under the same framework as claims under the Age Discrimination in Employment Act ("ADEA"). *Chambers v. Travelers Cos.*, 668 F.3d 559, 566 (8th Cir. 2012). The ADEA makes it unlawful for an employer to discharge or discriminate against any employee, age 40 or older, because of his age. 29 U.S.C. § 623(a)(1). A plaintiff bears the burden of either: (1) providing direct evidence of discrimination; or (2) creating an inference of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009).

7

Defendant contends that Plaintiff did not provide either direct or indirect evidence of age discrimination. Defendant argues that Plaintiff failed to present any connection between the alleged discrimination and the adverse employment action. Defendant further argues that Plaintiff failed to establish a prima facie case for age discrimination and, even if Plaintiff established a prima facie case, he failed to carry his burden of responding to Defendant's legitimate reason for termination.

### A. Direct Evidence

Plaintiff claims he can show age discrimination through direct evidence. Direct evidence requires "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (citation omitted). "Direct evidence" will not be found in "stray remarks in the workplace, statements by nondecision-makers, or statements by decision-makers unrelated to the decisional process itself." *Id.* at 1153.

To support Plaintiff's claim of direct evidence of age discrimination, Plaintiff appears to argue that there is "direct illegality." Specifically, Plaintiff asserts:

> Savoie can show direct evidence of discrimination In holmes all the court layed the foundation that plaintiff has to show that there is a direct illegality by evidence." *Holmes v. Trinity Health*, 729 F.3d at 821 " the decision process is not one that comes within the gambit of illegality because such act is one of decision to act in the best interest of the company, it however does not cover illegal decision see *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1043 (8th Cir. 2007).

((Doc. No. 47 ("Pl.'s Opp. Mem.") at 12) (mistakes in the original).)

8

This fails to constitute direct evidence regarding age discrimination. Plaintiff offers no evidence that Snyder's comments about another employee's age were related to his own termination. (Savoie Dep. at 51-54.) Plaintiff also admits to not being aware of Snyder making a comment about his age. (*Id.* at 51, 55-57, 60-61.) Despite his claim that he recorded his disputes with Snyder, Plaintiff failed to record any comments made by Snyder regarding Plaintiff's age in his journal. (*Id.* at 60-61.) In fact, Plaintiff fails to point to any evidence in the record at all that would support a claim for age discrimination. Finally, Plaintiff's unsigned and unsworn declaration is not admissible evidence and cannot be used to support raising a genuine issue of material fact for summary judgment.[1] 28 U.S.C. § 1746; *see Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (holding that the court was authorized to exclude unsigned affidavits in considering its summary judgment motion).

Because the burden to specify facts that show a genuine issue for trial rests with the non-moving party, *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004), and because "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim," *Gallagher v. Magner*, 619 F.3d 823, 832 (8th Cir. 2010) (citation omitted), this Court will not speculate or search the record to find direct evidence of age discrimination. Thus, the

---

[1] Even if Plaintiff's declaration was admissible, it was not cited in Plaintiff's Reply and did not raise a genuine dispute of material fact regarding Plaintiff's age discrimination or whistleblower claim. Consequently, the Court's decision would be the same with or without Plaintiff's declaration.

9

Court concludes that Plaintiff has failed to carry his burden and that there is no evidence that would lead a reasonable fact finder to conclude that there is a genuine issue of material fact based on direct evidence of age discrimination.

### B. Indirect Evidence

Plaintiff also claims he can show age discrimination through indirect evidence. When a plaintiff is unable to set forth direct evidence of age discrimination, courts have traditionally applied the *McDonnell Douglas* burden-shifting framework to determine whether there is indirect evidence of age discrimination. *See Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). To present a prima facie case for age discrimination, a plaintiff must show the following: (1) he was 40 years old or older; (2) suffered an adverse employment action; (3) met the expectations of the employer at the time of the adverse action; and (4) was replaced by someone *substantially* younger. *Holmes v. Trinity Health*, 729 F.3d 817, 822 (8th Cir. 2013) (emphasis added).

With regard to the fourth element, the Eighth Circuit not only requires the employee to be replaced by someone younger, but someone who is "substantially younger." *Hilde v. City of Eveleth*, 986 F. Supp. 2d 1068, 1075 (D. Minn. 2013) (citations omitted). Courts have reasoned that "evidence of a *substantial* age difference reasonably allows the conclusion that the plaintiff's age factored into the employer's decision." *Id.* at 1075 (citations omitted) (emphasis in original). Courts have found that "an eight-year gap appears too small to meet the 'substantially younger' threshold." *Id.* (citing *Chambers*, 668 F.3d at 566); *see Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th

Cir. 2003) (finding that a nine-year age difference was not substantial enough of an age disparity to support an inference of age discrimination).

Once a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to set forth a "legitimate, nondiscriminatory reason for its adverse employment action." *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011).  If the employer offers a legitimate reason, the burden shifts back to a plaintiff to provide evidence that the employer's "reason was mere pretext for discrimination." *Haigh*, 632 F.3d at 468.  This requires more than "merely discrediting an employer's asserted reasoning for terminating an employee . . . . [The plaintiff] is also required to show that the circumstances permit a reasonable inference" that the real reason he was terminated was because of discriminatory animus. *Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005) (alteration in original) (citations omitted).

The first three elements of Plaintiff's prima facie case are not in dispute.  However, Defendant argues that Plaintiff cannot show the fourth element because Plaintiff was not replaced by an individual who was substantially younger.  Plaintiff appears to argue that he was replaced by someone substantially younger by arguing:

> It cannot be disputed that who took over Savoie's job was younger and was a couple of years younger than Savoie the age differential alone does not by itself exposed the act of Snyder and Genpack, they did admit that the person put in Savoie's job was a Supervisor and that Savoie's job remained unfilled, so the fact that the person placed in the job temporarily does not absolve Genpak from their illegal act.

((Pl.'s Opp. Mem. at 12) (mistakes in the original).)

11

The Court agrees with Defendant that Plaintiff fails to present facts that could allow a reasonable jury to conclude that Plaintiff was replaced by someone substantially younger. First, it is unclear that Plaintiff's position was ever filled. Plaintiff's position remained vacant for approximately two months following his termination. (Sawchuk Decl. ¶¶ 31-32.) Don Kiser, who was 51 at the time of his hiring, was hired as a Plant Supervisor and not an Extrusion Department Manager, and held different duties than those of the Plaintiff. (*Id.*; Savoie Dep. at 106-07.) However, even assuming that Don Kiser replaced Plaintiff, the seven-year age difference between the two does not, as a matter of law, constitute a substantial age difference. (*See Hilde*, 986 F. Supp. 2d 1068.) Therefore, Plaintiff fails to present evidence that he was replaced by someone substantially younger and, thus, fails to establish a prima facie case of age discrimination.

Even if Plaintiff established that he was replaced by someone substantially younger, Defendant proffers a legitimate, non-discriminatory reason for Plaintiff's termination. Specifically, Defendant cites insubordination as the reason for Plaintiff's termination and points to facts in the record to support its claims. For example, Defendant submitted evidence and affidavits that Sawchuk terminated Plaintiff for cause because he publicly denigrated his supervisor over the intercom system and this dispute was heard by numerous employees. (*See* Doc. No. 40-16 ("Gehrke Decl."); Doc. No. 40-17 ("Dulac Decl.").) The Eighth Circuit has "repeatedly held that insubordination . . . [is a] legitimate reason[] for termination." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (citations omitted).

The burden then shifts back to Plaintiff to provide evidence that Defendant's reason for termination was mere pretext. Here too, Plaintiff fails to offer any evidence that rebuts Defendant's reason for termination. Plaintiff simply tries to discredit Defendant's reason through conclusory statements and fails to direct the Court to facts in the record that show the termination was mere pretext for a discriminatory animus. After reviewing the record, the Court finds that Plaintiff fails to provide direct or indirect evidence so as to create a "specific link" between the alleged discriminatory motive and adverse employment decision.

In sum, Plaintiff was not replaced by someone substantially younger and Plaintiff failed to carry his burden in responding to Defendant's reason for termination. When viewed in a light most favorable to Plaintiff, there is no genuine issue of material fact regarding Plaintiff's age discrimination claim and the Court, therefore, grants Defendant's Motion as to Count I.

### III.   Whistleblower Claim

The MWA prohibits an employer from discharging or discriminating against an employee who "in good faith, reports a violation or suspected violation, of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official." Minn. Stat. § 181.932, subd. 1(1). Like age discrimination claims under the MHRA, when direct evidence is lacking, the Court analyzes MWA claims using the burden-shifting framework set forth in *McDonnell Douglas*. *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

To establish a prima facie case under the MWA, a plaintiff employee must first show: (1) he engaged in statutorily-protected conduct; (2) suffered an adverse employment action; and (3) there was a casual nexus between the two. *Id.* If a plaintiff can establish a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. *Id.* If a defendant advances a legitimate reason for the adverse employment action and meets its burden of production, the plaintiff must then demonstrate that the defendant's articulated justification is pretextual. *Id.* At all times the employee has the burden to prove by a preponderance of evidence that the employer's action was taken for an impermissible reason. *Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 572 (Minn. 1987).

Defendant acknowledges that Plaintiff suffered an adverse employment action but challenges whether he engaged in statutorily-protected conduct and, if he did, whether such conduct was causally connected to his termination. Defendant attacks Plaintiff's MWA claim on three grounds. First, with regard to the statutorily protected conduct, Defendant argues that Plaintiff did not allege facts which, if true, would establish any legal violation. Second, Defendant argues that Plaintiff's reports of alleged legal violations were not made in good faith. Finally, Defendant contends that Plaintiff cannot demonstrate pretext because his complaints were earnestly investigated and were not causally connected to his termination. The Court agrees.

### A. Statutorily Protected Conduct

To engage in statutorily protected conduct, a plaintiff must identify "a federal or state law or rule adopted pursuant to law that is *implicated* by the employee's complaint, the employee reported the violation or suspected violation in *good faith*, and the employee alleges facts that, if proven, would constitute a violation of law or rule adopted pursuant to law." *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 354-55 (Minn. 2002) (emphasis added). However, the plaintiff "need not identify the specific law or rule that the employee suspects has been violated." *Id.* "While an actual violation of state or federal law need not have occurred for an employee's report to be protected, the employee must show that the activity reported, if it turned out to be true, would violate the law." *Weigman v. Everest Inst.*, 957 F. Supp. 2d 1102, 1106 (D. Minn. 2013) (citation omitted).

Plaintiff fails to raise any factual issues regarding whether Defendant violated any law and relies only on his Complaint to assert that there might be possible violations and potential illegal activity by Defendant. (Compl. ¶¶ 8-9.) While Plaintiff is not required to identify a specific violation of law in his complaint, none of the actions that Plaintiff alleges and nothing in the record implicate a violation of a law. During Plaintiff's deposition, he admitted that he was unaware of any violation of the law or even an industry standard that was not met. (Savoie Dep. at 69-70.) The record reflects that Plaintiff spoke with Snyder and wrote to the Human Resources manager, however, Plaintiff fails to point to any specific violation of a law or rule and instead refers only to

"potentially illegal activity." (Compl. ¶¶ 8-9.) Therefore, the Court concludes that there is no evidence that would support a finding that a law or rule was violated by the facts alleged by the Plaintiff.

Even if Plaintiff adequately identified a violation of a law, his reporting actions must have originally been conducted in good faith. To determine whether a plaintiff acted in good faith, "the central question is whether the reports were made for the purpose of blowing the whistle, i.e., to expose illegality." *Obst v. Microtron Inc.*, 614 N.W.2d 196, 202 (Minn. 2000) (citation omitted). "A court considers the employee's purpose at the time the report was made, not after subsequent events have transpired." *Id.*

Plaintiff only provides the following to support his claim that the reporting was done in good faith and does not cite to any facts in the record that would suggest good faith:

> People sometimes wrestle for years with ethical delima and fear stops them from acting this not uncommon For Genpak to use the time of knowledge and report does make them less liable for the illegal act.

((Pl.'s Opp. Mem. at 13) (mistakes in the original).)

Here, there is no evidence that Plaintiff was a neutral party who was "blowing the whistle" on his employer to expose illegality. Instead, Plaintiff's personal frustration with Snyder is evident in his e-mails with Sawchuk in which he makes negative comments about Snyder; through his negative statement on the intercom; and through the comments recorded in his journal. The Court concludes that the Plaintiff's reason for

"blowing the whistle" was not a good faith effort to expose an illegality, and rather, was a platform to voice his animosity and discontent with his supervisor.

### B. Causal Nexus

Even assuming Plaintiff had presented a prima facie case for whistleblowing retaliation, Plaintiff's Whistleblower claim would still fail because he did not point to evidence supporting a causal connection between his reporting of alleged violations and his termination, and he did not allege facts to establish pretext.

"[A]n employee may demonstrate a causal connection by circumstantial evidence that justifies an inference of retaliatory motive." *Cokley*, 623 N.W.2d at 632. "A claimant under the Whistleblower Act may establish an inference of reprisal by showing a close temporal proximity between the statutorily protected activity and the termination." *Krutchen v. Zayo Bandwidth Ne., LLC*, 591 F. Supp. 2d 1002, 1015 (D. Minn. 2008) (citing *Cokley*, 623 N.W.2d at 633).

To show causation and pretext, Plaintiff merely states in an unmarked footnote that the proximity between the protected act and termination is sufficient to establish a causal connection without any legal authority to support his claim. (Pl.'s Opp. Mem. at 13.) Plaintiff otherwise makes no reference to the record to support causation and pretext. This is not enough. As Defendant argues, the record reflects that Plaintiff was fired for a legitimate, non-discriminatory reason and not as a result of the complaints. While Plaintiff's termination was within two months of his complaints, Defendant demonstrated that Plaintiff's action in arguing with Snyder over the intercom system was

the reason for his termination.  And, as Defendant also notes, Sawchuk's investigation into Plaintiff's claims concluded that they were groundless.

In sum, the Court concludes that Plaintiff failed to implicate a violation of law and fails to provide sufficient evidence to support a prima facie case of whistleblower retaliation.  Even if Plaintiff could establish a prima facie case, Plaintiff's claim would still fail because Plaintiff failed to show that the legitimate reason given by Defendant for terminating Plaintiff was mere pretext for discrimination.  Therefore, the Court grants Defendant's Motion as to Count II.

## CONCLUSION

The record establishes that Plaintiff was subject to unprofessional conduct during his employment with Defendant.  However, while Defendant's conduct may have been unprofessional, it was not tantamount to legally actionable conduct.  Because the Court concludes that there are no genuine issues of material fact with respect to both Counts I and II, Defendant is entitled to summary judgment on both of Plaintiff's claims.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [38]) is **GRANTED** in its entirety and Counts I and II are **DISMISSED WITH PREJUDICE**.

2. Plaintiff's Complaint (Doc. No. [1-1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  December 5, 2014              s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge